## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| JERICO PICTURES, INC., | : | CASE NO. 24-20281-BKC -SMG |
| d/b/a NATIONAL PUBLIC DATA, | : | |
| | : | |
| DEBTOR. | : | |

_____

### EMERGENCY MOTION OF UNITED STATES TRUSTEE TO DISMISS THIS CASE AND REQUEST FOR EXPEDITED HEARING

### REASON FOR EXPEDITED HEARING PURSUANT TO LOCAL RULE 9075-1

**The Debtor, which operates a subscription data service, suffered a data breach in December 2023. The Debtor does not maintain appropriate insurance for the nature of its business and that may leave the estate at imminent risk and is harmful to the estate. The Debtor states that it may be required to notify and pay for credit monitoring for "hundreds of millions of potentially impacted individuals" yet has failed to provide any notice of this Chapter 11 case to these harmed creditors. Finally, Debtor's schedules indicate Debtor does not possess assets sufficient to accomplish a reorganization, let alone its disclosure obligations. Therefore, cause exists to warrant the dismissal of this case on an expedited basis and the United States Trustee requests that a hearing on the motion be set at the Court's earliest convenience.**

The United States Trustee files this emergency motion pursuant to 11 U.S.C. § 1112 (b) for an order dismissing this case and as grounds therefore states:

### I.    FACTS AND PROCEDURAL HISTORY

1. The Debtor filed a voluntary chapter 11 case under Subchapter V of the United States Bankruptcy Code on October 2, 2024 (the "Filing Date") (ECF No. 1).

2. On October 4, 2024, the United States Trustee appointed Aleida Martinez-Molina, as the Subchapter V Trustee (ECF No. 10).

3. The section 341 meeting of creditors is scheduled for November 4, 2024, at 9:00 a.m. (ECF No. 14).

4. The Debtor filed an Amended Chapter 11 Case Management Summary on October 10, 2024 (the "Amended Case Summary"). It describes the nature of the Debtor's business as follows:

> Debtor is a subscription data service, offering institutional clients an opportunity to perform a rapid background check through an automated online connection. The background checks are specifically designed to support organizations who must prohibit entry of individuals with background issues (like known sexual offenders, etc.) in real time who present to various institutions, as an example a large portion of the Debtor's business serves healthcare institutions. The Debtor also serves a variety of background services.
>
> The Debtor provides an application program interface (API) that can be reached through internet connectivity by the client. The client makes the software-based request and is returned a result determining whether the person has any background issues that would prevent them from visiting.

(ECF No. 18).

5. The Debtor maintains no dedicated physical office. The Debtor's principal operates the business from his home office, and all infrastructure is housed in independent data centers. It does not appear that the Debtor has any employees (ECF No. 18).

6. According to the Debtor, in or about December 2023, " . . . a well-known and notorious hacker referred to as "USDoD" violated the firm's security infrastructure and accessed a database containing the Personally Identifiable Information that included millions of records. . . The breach was eventually discovered as the start of a substantial penetration, and data has since been identified on "dark web sources" (ECF No. 18, ¶5).

7. As a result of this breach, the Debtor states it faces:

- Class action lawsuits by individuals whose information was released;
- Investigations by regulatory agencies;
- A loss of customers; and
- The requirement, through the application of various state laws, to notify and pay for credit monitoring for hundreds of millions of potentially impacted individuals.

(ECF No. 18, ¶5).

8. The Debtor's insurance carrier has declined coverage for the data breach (ECF No. 18).

9. Furthermore, the Debtor does not currently have insurance that would cover losses sustained as a result of a post-petition data breach.

10. The Debtor's schedules disclose minimal assets (ECF No. 1, ECF No. 18). The Debtor contends the value of its assets is between $25,000 and $75,000 (ECF No. 18, ¶9).

11. The United States Senate and the United States House of Representatives have opened inquiries into the data breach. On August 16, 2024, Senator Charles Grassley contacted the Debtor regarding the data breach and requested that the Debtor provide relevant information regarding the cyberattack (the "Grassley Inquiry").[1]

12. Senator Grassley's letter to the Debtor states:

> . . . [A]ccording to recent reports, a hacker known as "Fenice" leaked a version of the stolen NPD data on the dark web. The hacker claimed the data included 2.7 billion "records" of PII, though NPD has not acknowledged the number of users that were impacted. However, according to the lawsuit, USDoD claimed to have records of 2.9 billion "individuals," and sought a purchase price of $3.5 million for the data.

13. Similarly, on August 22, 2024, the House Committee on Oversight and Accountability (the "House Committee") opened a congressional inquiry and advised the Debtor it was investigating the cyberattack (the "House Inquiry").[2]

14. The House Committee's letter to the Debtor states:

> It is reported that the personal information of nearly 3 billion people were compromised, with the stolen data including information such as Social Security numbers, phone numbers, email addresses, and mailing addresses. If true, this data

---

[1] https://www.grassley.senate.gov/imo/media/doc/grassley_to_jerico-national_public_data_-_national_public_data_hack.pdf

[2] https://oversight.house.gov/wp-content/uploads/2024/08/NPD-Breach-Letter-08222024.pdf

breach likely represents one of the largest cyberattacks ever in terms of impacted individuals.

15. In its initial responses to the Grassley Inquiry and the House Inquiry, the Debtor indicated that it worked with counsel to provide data breach notifications to two groups, one comprised of 109 individuals and the other comprised of 1,350,684 individuals.

16. Despite admitting that it has provided data breach notifications to over 1.3 million individuals and acknowledging in its Amended Case Summary that it may be required to provide credit monitoring services to "hundreds of millions" of potentially impacted individuals, the Debtor failed to include these individuals on its schedules and failed to provide them notice of the commencement of this bankruptcy case (ECF Nos. 1 & 18).

## II. ARGUMENT

To avoid abuse, § 1112(b)(1) of the Bankruptcy Code permits a court to dismiss or convert a case for "cause" when it is in the best interests of creditors and the estate. Section 1112(b)(4) enumerates sixteen situations, any one of which may be sufficient to constitute cause for dismissal, but the list is not exhaustive. *In re 3 Ram, Inc.*, 343 B.R. 113, 117 (Bankr. E.D. PA. 2006) ("While the enumerated examples of cause to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, not exhaustive has not."). Here, there are multiple reasons to dismiss this case.

First, a failure to maintain appropriate insurance that poses a risk to the estate or to the public is cause for dismissal pursuant to 11 U.S.C. §1112(b)(4)(C). A debtor must maintain property and liability insurance coverage so that the assets of the bankruptcy estate are protected against loss. *In re Van Eck*, 425 B.R. 54 (Bankr. D. Conn. 2010). *See also In re Pure Repair & Trucking, LLC*, 658 B.R. 895 (Bankr. S.D. Ohio). The Debtor currently has no liability insurance that would cover a post-petition data breach, and its insurance carrier declined

coverage for the pre-petition data breach. If the Debtor cannot maintain insurance to protect against future liability, then not only is the estate at further risk, but the general public is too. The Debtor's failure to maintain adequate insurance is cause for dismissal pursuant to 11 U.S.C. §1112(b)(4)(C).

Second, a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, constitutes cause to dismiss a Chapter 11 case. 11 U.S.C. §1112(b)(4)(A). The facts establishing a substantial or continuing loss or diminution must occur post-petition. *In re Paterno*, 511 B.R. 62, 68 (Bankr. M.D.N.C. 2014). A debtor's financial prospects and records are relevant to this inquiry. *In re Oakley Grading & Pipeline, LLC*, 2019 Bankr. LEXIS 820 (Bankr. N.D. Ga. Mar. 15, 2019). Courts have found that an inability to pay ongoing expenses, combined with an absence of reliable income, may establish cause. *Paterno*, 511 B.R. at 67.

The Debtor admits that it has lost customers (ECF No. 18, ¶5) and it is expected that the Debtor will continue to have decreasing revenue and cash. The Debtor admits that it will need to retain the services of various law firms to address the complex regulatory issues it faces over multiple jurisdictions because of the data breach (ECF No. 18, ¶13). Debtor's counsel's Amended Disclosure of Compensation of Attorney For Debtor discloses that proposed counsel has already depleted its $30,000 pre-petition retainer and, without Court approval, received some additional amount as a post-petition retainer (ECF No. 22, see "Note"). As a result, the Debtor has continuing post-petition losses, and its financial prospects are poor.

While the Debtor's filings set forth its anticipated efforts to address its liabilities, the Debtor has offered no indication of how it intends, or whether it intends, to operate post-petition. The Debtor's Schedule B indicates that it had $33,105.00 in its pre-petition bank account as of

the Filing Date. There is no indication how the Debtor will fund its post-petition administrative expenses or the source of any post-petition revenue.

There is also no reasonable likelihood of rehabilitation for this Debtor. Rehabilitation for purposes of § 1112(b)(4)(A) "is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." *In re Wallace*, 2010 Bankr. LEXIS 261, 2010 WL 378351 at *4 (Bankr. D. Idaho Jan. 26, 2010). The Debtor lacks the income and resources to demonstrate a reasonable likelihood of rehabilitation. The Debtor has no business to reorganize. There appear to be limited assets to liquidate. It appears that this case was filed for the sole purpose of providing the Debtor with "breathing room" to deal with its regulatory issues, with no concomitant plan as to how it intends to satisfy the claims of affected individuals who may reach into the multi millions internationally.

Accordingly, pursuant to 11 U.S.C. § 1112(b)(4)(A), the Court should dismiss this case, considering the Debtor's continuing losses and the absence of a reasonable likelihood of rehabilitation.

Finally, cause exists to dismiss this case based on the Debtor's failure to meet its reporting obligations under 11 U.S.C. §521 (a)(1)(A) and F.R.B.P. 1007. The Debtor failed to include any federal regulatory and enforcement agencies on its schedules, including the Federal Trade Commission. Additionally, the Debtor has failed to include any of the impacted individuals on its bankruptcy schedules (ECF No. 1). None of the numerous parties harmed by the data breach— which the Debtor alleges is close to 1.35 million but could potentially be as many as 3 billion internationally— have received notice of the bankruptcy. Although the Debtor set forth in its response to the Congressional Inquiry that it has been providing data breach

notifications to certain groups of consumers, no consumers were listed on the Debtor's mailing matrix, therefore these parties have no notice of the case and important deadline herein. Moreover, given the number of consumers affected by the breach who require notice, Debtor has insufficient funds to notify these parties of the commencement of the bankruptcy, or to continue to comply with any future noticing obligations.

Thus, the Court should also dismiss this case due to the Debtor's failure and inability to file an accurate list of creditors pursuant to 11 U.S.C. §521 (a)(1)(A) and F.R.B.P. 1007 and provide notice of this bankruptcy case to these impacted parties. *See*, *In re Giuliani*, 661 B.R. 493 (Bankr. S.D.N.Y. 2024) (dismissing the debtor's Chapter 11 case based on, *inter alia*, deficiencies in the debtor's initial schedules).

Based on the foregoing, the United States Trustee submits that it would be in the best interests of the creditors to dismiss this case because no bankruptcy purpose will be served by the continuation of this case There does not appear to be a reasonable likelihood that the Debtor will have a meaningful bankruptcy reorganization in the face of the costs of completing adequate noticing to creditors.

(Rest of page intentionally left blank)

WHEREFORE, the United States Trustee respectfully requests the Court schedule an expedited hearing and enter an order dismissing this case and for such other and further relief as may seem just and proper.

Dated: October 23, 2024

        MARY IDA TOWNSON
        UNITED STATES TRUSTEE
        REGION 21

        By:_____/s/_____
        Martin P. Ochs*
        Georgia Bar No. 091608
        United States Department of Justice
        Office of the United States Trustee
        362 Richard Russell Building
        75 Ted Turner Drive SW
        Atlanta, Georgia 30303
        (404) 331-4509
        martin.p.ochs@usdoj.gov

    * I hereby certify that I am admitted to the Bars of the States of Georgia and New York and that I am excepted from additional qualifications to practice in this Court pursuant to Local Rule 9011-4 pertaining to attorneys representing the United States government.

**CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the **EMERGENCY MOTION OF UNITED STATES TRUSTEE TO DISMISS THIS CASE AND REQUEST FOR EXPEDITED HEARING** was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system to the following:

- **Angelo A. Gasparri** agasparri@kelleykronenberg.com, aroginski@sbwh.law
- **Aleida Martinez-Molina** Martinez@SubV-Trustee.com, camm11@trustesolutions.net

DONE this the 23rd day of October, 2024

              By:    /s/      .
                Martin P. Ochs*
                Georgia Bar No. 091608
                United States Department of Justice
                Office of the United States Trustee
                362 Richard Russell Building
                75 Ted Turner Drive SW
                Atlanta, Georgia 30303
                (404) 331-4509
                martin.p.ochs@usdoj.gov

*I hereby certify that I am admitted to the Bars of the States of Georgia and New York and that I am excepted from additional qualifications to practice in this Court pursuant to Local Rule 9011-4 pertaining to attorneys representing the United States government.